# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| LESLIE M. WALKER, | |
| Plaintiff, | |
| v. | CAUSE NO.: 3:18-CV-918-TLS |
| ANDREW SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Leslie M. Walker seeks review of the final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income. Plaintiff argues that the Administrative Law Judge (ALJ) made several errors in formulating her residual functional capacity (RFC), including the weight given to opinion evidence as well as to her subjective complaints. For the reasons set forth below, the Court finds that reversal and remand is required for further proceedings.

## PROCEDURAL BACKGROUND

On April 1, 2015, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning September 9, 2014. AR 242, 246, ECF No. 10. The claims were denied initially and on reconsideration. *Id*. 145, 154, 166, 173. Plaintiff requested a hearing, which was held before the ALJ on July 27, 2017. *Id*. 183, 200. On November 21, 2017, the ALJ issued a written decision and found Plaintiff not disabled. *Id*. 8–29. On November 13, 2018, Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. Plaintiff filed an opening brief [ECF No. 18], the Commissioner filed a response brief [ECF No. 22], and Plaintiff filed a reply brief [ECF No. 23].

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 9, 2014, the alleged onset date. AR 12.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Here, the ALJ determined that Plaintiff has the severe impairments of left knee meniscus tear, status-post left knee arthroscopy with partial medial meniscectomy and chondroplasty, obesity, type 2 diabetes mellitus, lumbar degenerative facet arthropathy, mid and lower thoracic degenerative spondylosis, chronic obstructive pulmonary disease, carpal tunnel syndrome on the left, obstructive sleep apnea, peripheral neuropathy, osteoarthritis in the bilateral knees, and chronic renal insufficiency (stage 3). AR 13.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 1.02, 1.04, 3.00, 6.00, and 11.14. AR 14–15.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally operate foot controls bilaterally. She can frequently operate hand controls on the left (non-dominant hand) and can frequently handle, finger and feel on the left. She can occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid unprotected heights and moving mechanical parts. She can occasionally operate a motor vehicle. The claimant can tolerate occasional exposure to fumes, odors, dusts and other pulmonary irritants.

AR 16.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). In this case, the ALJ found that Plaintiff is capable of performing her past relevant work as a chief guard and security guard, finding that the work does not

3

require the performance of work-related activities precluded by Plaintiff's RFC. AR 22. Because Plaintiff could perform her past relevant work, the ALJ found that Plaintiff was not disabled at step four under 20 C.F.R. §§ 404.1520(f), 416.920(f). AR 23. Thus, the ALJ did not need to move to step five to consider whether Plaintiff could "make an adjustment to other work" in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1512, 416.912.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–3. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds

could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC by failing to properly weigh the medical opinion evidence, by failing to properly weigh Plaintiff's subjective symptom testimony, and by failing to consider certain evidence. Plaintiff also argues

5

that remand is required on the basis that the ALJ was not constitutionally appointed. The Court finds that remand is required for a proper evaluation of the medical opinion evidence.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The Court considers each of Plaintiff's arguments in turn.

**A.    Medical Opinion Evidence**

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Medical opinions are weighed by

considering the following factors: (1) whether there is an examining relationship; (2) whether there is a treatment relationship, and if so the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence and by explanations from the source; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

*1.     Dr. Vemulapalli, Consultative Examiner*

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Vemulapalli, a consultative examiner who examined Plaintiff on July 8, 2015. The Court agrees that the ALJ did not offer a sufficient explanation supported by substantial evidence for giving little weight to Dr. Vemulapalli's opinion that, in relevant part, Plaintiff is unable to stand and/or walk at least two hours in an eight-hour day.

Dr. Vemulapalli's report shows that, on review of symptoms, Plaintiff reported joint pain, joint swelling, joint stiffness, back pain, muscle spasm, muscle weakness, numbness, tingling, and loss of balance. AR 532. Plaintiff reported problems with her left knee wobbling and constant tingling and numbness in both legs and feet. *Id.* 533. Plaintiff also reported that she has to navigate one step at a time when going down the stairs. *Id.* On examination, Dr. Vemulapalli found limited range of motion in the lumbar spine with forward flexion, extension, and lateral flexion. *Id.* 530. Dr. Vemulapalli also found some limited knee range of motion on flexion. *Id.* Dr. Vemulapalli found that Plaintiff's gait was limping; she ambulated with a cane; her station was broad based; her coordination was decreased heel, knee, shin; she had joint inflammation;

7

and she had tenderness in the bilateral lower and lumbar region. *Id.* 533. Dr. Vemulapalli found muscle strength of 5/5 in the upper and right lower extremities and strength of 4/5 in the left lower extremity. *Id.*

In the "Medical Source Statement" portion of the report, Dr. Vemulapalli wrote that Plaintiff is able to communicate effectively, will have difficulty maintaining focus and attention, is unable to stand/walk at least two hours in an eight-hour day, is able to lift over ten pounds occasionally, can frequently lift under ten pounds, must alternate sitting and standing occasionally, and is able to perform fine and gross movements effectively. *Id.*

In his decision, the ALJ first summarized the following about Dr. Vemulapalli's opinion: Plaintiff "would have difficulty concentrating and . . . she would be unable to stand or walk at least 2 hours in an 8-hour day. She could lift 10 lbs. occasionally and must alternate between sitting and standing occasionally." *Id.* 21 (citing AR 533). The ALJ gave the opinion "little weight," *id.*, but fails to satisfy his burden of creating a logical bridge between the evidence and this conclusion.

As an initial matter, the Court notes, and the parties recognize, that the ALJ misstated Dr. Vemulapalli's opinion regarding Plaintiff's ability to lift. The ALJ wrote that the limitation was to occasionally lifting 10 pounds. *Id.* However, as noted above, Dr. Vemulapalli found that Plaintiff could lift *over* 10 pounds occasionally and lift under 10 pounds frequently. *Id.* 533. Although this misstatement is minor, in light of the unsupported reasoning the ALJ gave for giving little weight to Dr. Vemulapalli's opinion as discussed below, this misstatement is one more factor showing the improper consideration of the opinion.

Turning to the ALJ's reasoning, the ALJ wrote:

This opinion warrants little weight, as it is not fully consistent with the medical evidence of record or the claimant's own statements that she is able to follow a

> simple recipe and enjoys reading and going to the library. Further, the claimant
> testified that she is able to grocery shop and bring the groceries in the house, with
> the exception of a box of water. Additionally, based on the claimant's imaging
> from November 2015, the claimant's spine was normal and her knees only
> showed "mild" osteoarthritic changes bilaterally.

AR 21 (internal citations omitted). As discussed in the next section of this Opinion, the ALJ gave "significant weight" to the August 2015 and February 2016 opinions of the non-examining, state agency reviewing physicians. *See id.*

The Seventh Circuit Court of Appeals has noted that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1)). Like in *Beardsley*, the ALJ in this case "did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor[s]." *Id*.

First, as to the statement that the opinion is not "fully consistent with the medical evidence of record," the only example provided by the ALJ is the November 2015 imaging studies. *See* AR 21 (citing AR 591, 593–94). Indeed, the November 2015 x-ray of Plaintiff's lumbar spine was "normal," *id.* 591, and x-rays of Plaintiff's knees showed "mild" osteoarthritic changes in both knees, *id.* 593–94. However, the ALJ failed to reconcile the "mild" findings of the November 2015 knee x-ray with the left knee MRI performed 10 days later, which showed small effusion, patellar chondromalacia, torn medial meniscus, and possible tear versus degeneration lateral posterior horn. *Id.* 1009. The ALJ also did not discuss Plaintiff's March 16, 2016 left knee arthroscopy with partial medial meniscectomy and chondroplasty. *Id.* 816. The surgery report recognizes the pre-operative diagnosis of left knee pain with MRI evidence of

9

medial meniscus tear and patella chondromalacia. *Id*. Likewise, the ALJ did not discuss the February 17, 2016 x-ray of Plaintiff's thoracic spine, which was taken because of Plaintiff's chronic mid-back pain and which showed mid/lower thoracic degenerative spondylosis with rather prominent involvement at the T11-12 level. *Id*. 665. Based on this failure to consider the subsequent objective tests and surgery, the ALJ's conclusion that Dr. Vemulapalli's opinion "is not fully consistent with the medical evidence of record" is not supported by substantial evidence.

Moreover, the ALJ did not discuss the consistency of the November 2015 examination findings and Medical Source Statement of consultative examiner Dr. Kennedy. *See id.* 586–89. On examination, Dr. Kennedy noted Plaintiff's report of back and knee pain. *Id.* 587. Dr. Kennedy found that Plaintiff could walk three to four steps before becoming slightly ataxic and needing to be supported not to fall. *Id.* Plaintiff's heel walk was similar, with her taking two to three steps before becoming ataxic. *Id*. Plaintiff was able to do a toe walk with antalgia to the left knee noted and favoring of the right leg. *Id*. Her regular walk had a slightly wide-based gait, was slow and laborious, and had slightly poor pivoting. *Id*. She walked more steadily with a cane. *Id.* On musculoskeletal exam, Dr. Kennedy noted no muscular atrophy or swelling; and he no midline tenderness of spinous processes or vertebral bodies of the spine. *Id.* 588. However, Dr. Kennedy observed bilateral knee, left greater than right, joint space widening and changes such as crepitus bilaterally characteristic of osteoarthritis. *Id*. He noted trace edema in bilateral lower extremities. *Id*. He noted that upper and lower extremity strength was 5/5 throughout and that pinch and grip of hands was normal. *Id.*

Then, in his Medical Source Statement, Dr. Kennedy opined that Plaintiff "would have some difficulty with climbing stairs, lifting, carrying, and walking or standing for an extended

period of time." *Id.* 589. Although "extended period of time" is not defined, the light work standing/walking requirement of six hours in an eight-hour workday would likely meet that definition. In that regard, Dr. Kennedy's opinion appears not inconsistent with Dr. Vemulapalli's opinion that Plaintiff would be unable to stand or walk at least two hours in an eight-hour day. The ALJ's failure to discuss this aspect of the supportability regarding Dr. Vemulapalli's opinion further supports remand on this issue.

And, the ALJ failed to consider other consistent medical evidence in weighing Dr. Vemulapalli's opinion. Earlier, in February 2015, Dr. Harvinder Kumar diagnosed Plaintiff with peripheral neuropathy with progressive sensory symptoms involving the feet, likely related to diabetes. *Id.* 396. Dr. Kumar's examination and findings indicated that Plaintiff had reduced pinprick in the hands and feet with diffuse hyporeflexia and an inability to tandem walk. *Id.* EMG testing of the lower extremities in February 2015 showed "[g]eneralized large fiber, sensorimotor neuropathy, axonal in nature, mild in degree electrically." *Id.* 388–89.

On February 9, 2016, Plaintiff reported to Dr. Engle that she was experience left knee pain, described as moderate and aching and aggravated by weight bearing. *Id.* 1002. She reported chronic back pain, with the current episode that started over a month earlier with moderate, aching pain in the lumbar spine and sacroiliac region that was aggravated by standing and bending. *Id.* On examination, Plaintiff was positive for back pain and exhibited bony tenderness in the left, with medial joint line and lateral joint line tenderness but normal range of motion. *Id.* Dr. Engle also found right lumbar spine paravertebral muscle tenderness and right sacroiliac tenderness to exam with no difficulty ambulating. *Id.*

In June 2016, Plaintiff started pain management treatment with Dr. Austin for back pain, and exams revealed an antalgic gait. *Id.* 1133, 1146, 1153, 1168, 1184, 1199, 1205, 1222.

11

Physical therapy records also documented difficulty walking with increasing pain with prolonged walking/standing and antalgic gait pattern. *Id.* 761, 1019, 1026, 1040, 1048, 1050, 1053–55, 1056.

Therefore, when the medical record is viewed as a whole, the ALJ's finding that Dr. Vemulapalli's opinion "is not fully consistent with the medical evidence of record," *id.* 21, is not supported by substantial evidence in relation to Plaintiff's ability to stand and/or walk for six hours in an eight-hour workday.

The ALJ's second reason for giving Dr. Vemulapalli's opinion little weight is that the opinion is not fully consistent with Plaintiff's own statements. Again, the ALJ's conclusion is not supported by substantial evidence. It appears that the ALJ's reference to Plaintiff's ability to follow a recipe, read, and go to the library goes to Dr. Vemulapalli's opinion that Plaintiff would have difficulty with concentration but says nothing about Plaintiff's back or knee pain or her ability to stand or walk more than two hours in an eight-hour workday. And, to the extent the ALJ is discrediting Dr. Vemulapalli's opinion that Plaintiff has difficulty concentrating, the ALJ did not discuss Plaintiff's testimony that pain affects her ability to concentrate, specifically that, if she is in pain while sitting, she will read the same paragraph three times. *Id.* 63. Plaintiff testified that this is frustrating because she enjoys reading. *Id.*

The only other alleged inconsistency noted by the ALJ is Plaintiff's testimony that "she is able to grocery shop and bring the groceries in the house, with the exception of a box of water." *Id.* 21. This statement is an oversimplification of Plaintiff's hearing testimony. At the hearing in July 2017, Plaintiff testified that she goes grocery shopping once every couple of weeks at Walmart, uses a "cart thing," and on good days she might push a cart for a "little while." *Id.* 60. Plaintiff testified that she asks for assistance getting groceries from the store to the car. *Id.* 61.

12

Once home, if there is anything heavy, like water or something in a case, she leaves the items in the car for her daughter to bring in. *Id*. She further testified, "Mostly I just try to make sure anything cold I bought gest in the house. Anything other than that can wait until they get home." *Id.* This is similar to Plaintiff's report to the psychological consultative examiner in July 2015—contemporaneous with Dr. Vemulapalli's examination—that she uses a motorized scooter at the grocery store unless she only needs a few items. *Id.* 535–36. There is no evidence that Plaintiff's reports of minimal shopping, usually with a motorized cart, are inconsistent with Dr. Vemulapalli's opinion that Plaintiff is unable to stand or walk more than 2 hours in an eight-hour day. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (criticizing the ALJ's reliance on activities of daily living that are not inconsistent with an inability to do work in a competitive work environment); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005).

Finally, as to the regulatory factors, the Court notes that Dr. Vemulapalli provided her opinion based on an examination of Plaintiff, using diagnostic examination techniques. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Dr. Vemulapalli reviewed Plaintiff's history and symptoms and then did a physical examination, including range of motion testing. AR 530–33. Generally, an examining source is given more weight than a non-examining source. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Nowhere did the ALJ discuss how he factored in the examining nature of Dr. Vemulapalli's opinion or Dr. Vemulapalli's examination findings themselves. Although Dr. Vemulapalli found full strength in three of four extremities, the neurological and musculoskeletal examinations documented abnormal findings that included a limping gait, decreased coordination, joint inflammation, tenderness to the bilateral lower lumbar region, and reduced strength of 4/5 in the lower left extremity. AR 533. The ALJ did not offer any explanation as to how these findings do not support or are inconsistent with Dr.

Vemulapalli's Medical Source Statement that Plaintiff is limited to standing and/or walking less than two hours in an eight-hour period. *See id.* 21; 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

In response to this appeal, the Commissioner argues that there is evidence that Plaintiff improved following the March 2016 knee surgery such that further consideration would not have affected the ALJ's evaluation of Dr. Vemulapalli's opinion. Def.'s Br. 7, ECF No. 22. First, as noted by Plaintiff, the ALJ did not offer any analysis of Plaintiff's knee surgery in weighing Dr. Vemulapalli's opinion; therefore, it is an impermissible post hoc rationalization in violation of the *Chenery* doctrine. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2020) ("[T]he *Chenery* doctrine . . . forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)). Second, there is evidence that Plaintiff continued to experience pain and difficulty walking, even after surgery. In her October 2015 adult function report, Plaintiff reported that she would take her dog and her roommate's dogs for a short walk, but not all the dogs at one time. AR 331. In July 2016, Plaintiff reported that she walks her dog "regularly," with a total of thirty to forty minutes of exercise daily. *Id.* 331, 888. By the time of the June 2017 hearing, Plaintiff's pain was worsening, particularly in her hips; she explained that she could no longer walk the dogs around the block, needing to return to the house after walking "halfway up the one side of the block" because her "hips get to hurting so bad." *Id.* 56.

The Court recognizes that, as the ALJ noted, Plaintiff was 59 years old at the time of the ALJ's decision. *Id.* 16. Based on the vocational expert testimony of record, even if Plaintiff were

able to stand or walk for four hours in an eight-hour workday, she would be unable to perform her past work, *see id.* 71–72; and, given her age, education, and previous work experience, if she is unable to perform her past work, she would be disabled under Medical Vocational Rule 202.06, even if she could otherwise perform work at the light exertional level. 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 202.06. Thus, the failure to properly weigh Dr. Vemulapalli's opinion, especially as to the standing/walking requirement is not harmless.

Based on the foregoing, the ALJ has offered no good reasoning for giving little weight to the consultative examination of Dr. Vemulapalli. Although Dr. Vemulapalli was not a treating source, she was an examining source. The ALJ failed to discuss medical records that are consistent with Dr. Vemulapalli's opinion, and failed to properly consider Plaintiff's testimony that was entirely consistent with the opinion. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) ("An ALJ need not specifically address every piece of evidence, but most provide a 'logical bridge' between the evidence and his conclusions." (quoting *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008))). Remand is required for the ALJ to properly weigh Dr. Vemulapalli's opinion.

2.  *State Agency Physician Opinions*

The ALJ gave "significant weight" to the opinions of the non-examining state agency medical consultants, Dr. Brill and Dr. Whitley. AR 21. In August 2015, Dr. Brill opined that Plaintiff could perform light work with postural and environmental limitations, including occasionally climbing ladders, ropes, and scaffolds. *Id.* 100–02. In January 2016, Dr. Whitley affirmed Dr. Brill's assessment except that he found that Plaintiff could never climb ladders, ropes, and scaffolds. *Id.* 127–28. In giving these opinions significant weight, the ALJ recognized that Dr. Brill and Dr. Whitley had not examined Plaintiff but reasoned that they are medical

15

doctors familiar with agency regulations. *Id.* 22. The ALJ then reasoned that their findings are "supported with citations to the objective evidence as well as a detailed and persuasive narrative with consideration given to the claimant's allegations and other opinion evidence as well." *Id.* And, the ALJ found the opinions "generally consistent with the medical evidence of record." *Id*. The ALJ offered no specific analysis to support these conclusions.

As to whether Dr. Brill and Dr. Whitley in fact reviewed the "other opinion evidence," under "Assessment of Policy Issues" and "Weighing of the Opinion Evidence" section of the Disability Determination Explanation forms completed by Dr. Brill and Dr. Whitley, the evaluations both indicate: "There is no indication that there is medical or other opinion evidence." *Id.* 100, 127. Yet, Dr. Vemulapalli's July 2015 report was submitted for Dr. Brill's August 2015 review at the initial level of review. *Id.* 95, 102, 530–34. And, Dr. Brill recited Dr. Vemulapalli's examination findings. *Id.* 102. As for Dr. Whitley's review in January 2016, the consultative examination reports of both Dr. Vemulapalli and Dr. Kennedy were available. *Id.* 120, 122, 129, 586–89. And, Dr. Whitely recited the examination findings of both. *Id.* As discussed above, the Medical Sources Statements provided by both Dr. Vemulapalli and Dr. Kennedy included limitations with lifting, carrying, standing, and walking. Neither Dr. Brill nor Dr. Whitley acknowledged the Medical Source Statements in their narratives. Thus, there is no evidence that Dr. Brill and Dr. Whitley reviewed the consultative examiner medical source statements.

As to the ALJ's characterization of the "detailed and persuasive narrative" provided by the reviewing doctors, a review of the opinions reveals no discussion of the evidence. Under the "RFC–Additional Explanation," Dr. Brill recites Plaintiff's medical records but offers no analysis. *Id.* 102. He notes the examination findings of limping gait with a cane and joint

inflammation but offers no explanation as to how Plaintiff could stand and walk six hours in an eight-hour workday or occasionally climb ladders, ropes, and scaffolds. *Id.* Likewise, Dr. Whitley cited Dr. Kennedy's examination findings of a BMI of 53, a slightly wide-based gait that was slow and laborious with slightly poor pivoting, and an ataxic tandem and heel gait. *Id.* 129. Yet, Dr. Whitley did not explain how those findings are consistent with an ability to stand and walk six hours in an eight-hour workday. *Id.*

As discussed above, the imaging of Plaintiff's left knee ultimately led to knee surgery in March 2016. *See id.* 816. Neither Dr. Brill nor Dr. Whitley reviewed the November 2015 left knee MRI, which showed small effusion, patellar chondromalacia, torn medial meniscus, and possible tear versus degeneration lateral posterior horn, *see id.* 1009, and neither reviewed the February 2016 thoracic spine x-ray showing mid/lower thoracic degenerative spondylosis with rather prominent involvement at the T11-T12, *see id.* 665. Neither doctor was aware of the March 2016 surgery or the subsequent pain management treatment. This subsequent medical evidence is significant, and the ALJ did not discuss how he considered the state agency reviewer opinions in light of this new evidence.

The Court recognizes that state agency physicians are deemed, by regulation, to be "highly qualified . . . experts in Social Security disability evaluation" and their opinions constitute medical evidence that is considered in the disability determination process. *See* 20 C.F.R. §§ 404.1513a(b)(i), 416.913a(b)(i); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (referring to §§ 404.1513a, 416.913a). However, the ALJ must nevertheless properly weigh the opinions under the regulatory factors. Here, the ALJ did not create a logical bridge between the evidence and the weight given to the state agency physician's opinions, nor is the weight supported by substantial evidence. On remand, the ALJ will have an opportunity to consider and

explain whether updated state agency opinions are warranted or whether different weight should be given to the opinions. *See, e.g.*, *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (criticizing the ALJ's reliance on state agency physicians who had only reviewed a fraction of the treatment records (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010))); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding because new medical findings could reasonably change the reviewing physician's opinion).

**B.    Plaintiff's Subjective Complaints**

The ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). Subjective allegations of disabling symptoms alone cannot support a finding of disability. SSR 16-3p, 2017 WL 5180304, at *2. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)   The individual's daily activities;
(2)   Location, duration, frequency, and intensity of pain or other symptoms;
(3)   Precipitating and aggravating factors;
(4)   Type, dosage, effectiveness, and side effects of any medication;
(5)   Treatment, other than medication, for relief of pain or other symptoms;
(6)   Other measures taken to relieve pain or other symptoms;
(7)   Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Here, Plaintiff argues that the ALJ made several errors in assessing Plaintiff's subjective complaints regarding her ability to walk halfway across Walmart; not being able to lift more than a half-gallon of milk but giving her 18-pound dog a bath; testifying that she often loses her grip but having been found to have 5/5 grip strength bilaterally; looking for employment and taking out her dog; an ability to grocery shop, do

18

laundry, wash dishes, vacuum, and water the lawn despite testimony showing significant limitations in each activity; and a benefit from physical therapy. On remand, the ALJ will have an opportunity to reassess each of these aspects of Plaintiff's testimony in the full context in which each statement was made. *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (finding the ALJ's decision to discredit the plaintiff and a treating psychologist "unsupported by the record because the ALJ's examples of [the plaintiff's] daily activities and social interactions do not remotely describe a 'very active' lifestyle").

**C.     Additional Limitations**

Plaintiff also argues that the ALJ failed to consider limitations stemming from Plaintiff's non-severe impairments, namely degenerative joint disease in the right foot, hypothyroidism, hypertension, history of herpes zoster, hyperlipidemia, bone spur of the right foot, carpal tunnel syndrome on the right, headaches, anxiety, and depression. *See* AR 13. Plaintiff does not identify any limitations from these non-severe impairments. Rather, she contends that she has problems with concentration and the need to lie down during the day for a nap in relation to her severe impairment of sleep apnea. Plaintiff does not cite any evidence in support of these limitations other than evidence described above. Although this is not a basis for remand alone, the ALJ will have an opportunity on remand to consider whether Plaintiff has any limitations related to concentration or napping due to her sleep apnea.

**D.     Appointments Clause**

Plaintiff has also brought an Appointments Clause challenge as an alternative argument. Specifically, relying on the developing body of case law following the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), Plaintiff argues that the case must be remanded because the ALJ who presided over her hearing is an inferior officer under the Appointments Clause and

was not constitutionally appointed. As the parties recognized, the then-acting Commissioner of the Social Security Administration ratified the appointments of all previously hired ALJs in light of the holding in *Lucia*. *See* Soc. Sec. Admin., EM-180003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATED.[1] Therefore, the ALJ on remand will not be vulnerable to the same Appointments Clause challenge raised here. Because the case is being remanded on other grounds, further analysis of this argument is not warranted.

**E.     Award of Benefits**

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for further proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Based on the discussion above, an immediate award of benefits is not appropriate.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in Plaintiff's Brief [ECF No. 18] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion. The Court DENIES Plaintiff's request to award benefits.

SO ORDERED on April 8, 2020.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT

---

[1] https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM (last visited Apr. 8, 2020).